**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WILBERT RIVERA,

        Plaintiff,

vs.                                         CASE NO. 3:07-cv-562-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits, and Supplemental Security Income. The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly, the matter has been decided on the written record. The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

**I. Procedural History**

On June 9, 2005, Plaintiff protectively filed applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging he became disabled on March 26, 2005 (Tr. 17, 95-101).  After Plaintiff's applications were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (Tr. 25-34, 73).  A hearing was conducted on August 24, 2006, before the ALJ Robert Droker (the "ALJ") (Tr. 277-97).  On December 5, 2006, the ALJ issued a decision denying Plaintiff's applications (Tr. 11-24).  The Appeals Council denied Plaintiff's Request for Review (Tr. 4-8), which made the ALJ's decision the final decision of the Commissioner.  After exhausting his administrative remedies, Plaintiff now appeals.

**II. Standard of Review**

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.  *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986).  The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[1]; *Crayton v. Callahan*, 120 F.3d

---

[1] All references made to 20 C.F.R. will be to the 2008 edition unless otherwise specified.

1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden temporarily shifts to the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.

1991)).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations.  20 C.F.R. §§ 404.704; 416.912(c).

### III. Background Facts

Plaintiff was 44 years old at the time of the ALJ's decision (Tr. 95).  Plaintiff has a high school education and past relevant work as a restaurant worker, landscape laborer, and security guard (Tr. 121, 123).  Plaintiff's preferred language is Spanish; however, he has lived in the United States for twenty (20) years and can read and understand English (Tr. 115, 272).  An interpreter was provided for Plaintiff at the administrative hearing (Tr. 277).  Although Plaintiff was advised that a representative could be present throughout the hearing, Plaintiff chose to proceed with the hearing without a representative. (Tr. 279-80).

Plaintiff alleges he became disabled on March 26, 2005, after a heavy piece of machinery rolled onto his left foot (Tr. 116, 199).  X-rays taken the day of the accident revealed a fracture of Plaintiff's left great toe and no abnormality involving Plaintiff's ankle (Tr. 199).  Two days after the accident, on March 28, 2005, Plaintiff's treating physician, Dr. Edward Demmi ("Dr. Demmi") stated Plaintiff could return to seated work only (Tr. 230). On March 31, 2005, Dr. Demmi stated Plaintiff could perform sedentary work, but was restricted to "minimal walking" (Tr. 225).  Over the next several months (between April 1, 2005 and June 23, 2005), Dr. Demmi examined Plaintiff on seven occasions (Tr. 201, 204, 208, 211, 214, 218, 221).  Dr. Demmi's reports regarding each of the aforementioned examinations state that Plaintiff could perform work activity with restrictions, and that he suspected Plaintiff suffered from reflex sympathetic dystrophy ("RSD")[2] (Tr. 201, 204, 208, 211, 214, 218, 221).

From December 2005 through May 2006, Plaintiff was treated by Dr. Jesse Lipnick ("Dr. Lipnick") (Tr. 262-76).  On December 12, 2005, Dr. Lipnick examined Plaintiff and noted that, upon palpation, Plaintiff exhibited overreaction with a theatrical demeanor (Tr. 275).  Dr. Lipnick's impression was non-organic pain with disability focus; however, he ordered a bone scan to rule out complex regional pain syndrome, type I ("CRPS")[3] (Tr. 276).  On April 12, 2006, a bone scan was performed on Plaintiff (Tr. 271).  The results of the bone scan indicated there were non-specific findings that were not "completely

---

[2]RSD is a chronic pain syndrome most often resulting from trauma to a single extremity.  SSR 03-2P, 2003 WL22399117, at *1 (S.S.A. Oct. 20, 2003).

[3]The terms RSD and CRPS are synonymous.  SSR 03-2P at *1.  Diagnostic criteria for RSD and CRPS include: swelling, changes in skin color and texture, increased sweating, and abnormal hair growth. *Id.* at *2.

incompatible with RSD"; however, the report also indicated that the non-specific findings could also be attributable to altered weight bearing due to Plaintiff's symptomatology (Tr. 271).

On May 31, 2006, in a report regarding the results of Plaintiff's April 12, 2006 bone scan, Dr. Lipnick reiterated the aforementioned results related to the non-specific findings and noted that his impression was "non-organic pain with disability focus" (Tr. 263). Dr. Lipnick additionally stated that he did not believe Plaintiff suffered from CRPS, type I, and made the following statement: "there is no physical evidence which I can detect to support a diagnosis of CRPS" (Tr. 263). In reaching the foregoing conclusions, Dr. Lipnick relied on his physical examinations of Plaintiff, x-rays taken of Plaintiff's foot, MRIs, nerve conduction studies, and EMGs (Tr. 263-67, 271, 273-74). Dr. Lipnick did not assign Plaintiff any functional limitations, and indicated his findings did not support Plaintiff's complaints of pain (Tr. 263- 64, 268-70).

Moreover, Dr. Lipnick reported that

> [h]air growth, skin turgor, skin moisture, skin color all appear equal between his legs; although he [Plaintiff] continues to tell me during the examination that his foot is purple, cold and swollen. It is as though he and I are looking at different feet. The foot I see appears to be normal and equal to the right foot. [. . .] The patient begs me to write letters supporting disability and I refer him to his attorney.

(Tr. 264).

After a careful review of the medical evidence and Plaintiff's testimony, the ALJ found that Plaintiff had the exertional capacity to perform a significant range of light work (Tr. 20). The ALJ elicited testimony from vocational expert, Rick Robinson (the "VE"), who provided a list of jobs in the regional and national economy that Plaintiff can perform

6

despite his functional limitations and vocational profile (Tr. 23; *see also* Tr. 295).

The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and work experience who can perform light work with a sit/stand option, but has a limited command of the English language and needs to have instruction in Spanish (Tr. 294). The ALJ also asked the VE to consider that the individual needs to avoid the operation of foot controls with his left foot, to avoid ladders and unprotected heights, and to avoid the operation of heavy moving machinery (Tr. 294). The ALJ further asked the VE to consider that the individual could occasionally bend, crouch, kneel, stoop, squat, or crawl (Tr. 294).

The VE responded that, based on the hypothetical, Plaintiff could perform the work of gate guard, school bus monitor, and addresser (Tr. 296). *See* United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 372.667-030, 372.667-042, 209.587-010 (4th Ed. 1991). Accordingly, the ALJ determined that Plaintiff was not disabled at Step 5 of the sequential evaluation process (Tr. 23).

## IV. Analysis

Plaintiff advances three arguments in support of his appeal. The undersigned finds each argument unpersuasive for the following reasons.

Plaintiff's first argument is that the ALJ erred by misstating the burden of proof at Step 5 of the sequential evaluation process (Doc. #12 at 5-8). This argument is without merit. The ALJ stated the burden of proof at Step 5 as follows:

> Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists

>in significant numbers in the national economy that the claimant can do, given the residual functional capacity (RFC), age, education, and work experience.

(Tr. 19).

At Step 5 of the sequential evaluation process, the burden of proof temporarily shifts to the Commissioner to determine if there is other work available in significant numbers in the regional and national economy that the claimant can perform despite his or her limitations.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  At this step, the Commissioner will consider a claimant's RFC and vocational profile (*i.e.* age, education, work experience) in order to determine whether the claimant can make an adjustment to other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

When the Commissioner has met the burden of proving other work is available in the economy, the "burden *shifts back* to the claimant to prove [he or] she is unable to perform the jobs suggested by the [Commissioner]."  *Hale*, 831 F.2d at 1011 (emphasis added).  The undersigned finds the ALJ's statement that the claimant "generally continues to have the burden of proving disability at [step five]" (Tr. 19) is merely a question of semantics and is consistent with the Regulations and the law of this Circuit.  The ALJ's statement is consistent with the Regulations, which provide that "[i]n general, you have to prove to us [the SSA] that you are blind or disabled."  20 C.F.R. §§ 404.1512(a), 416.912(a).

Plaintiff cites an Eighth Circuit case, *Brown v. Heckler*, to support his contention that the ALJ's decision should be reversed because of the alleged misstatement of the Commissioner's burden at Step 5.  787 F.2d 447 (8th Cir. 1986); (Doc. #12 at 7).  *Brown*

*does* not support Plaintiff's position, however, because the facts and circumstances of that case differ from those of this case.  Specifically, in *Brown*, the ALJ failed to temporarily shift the burden to the Commissioner at Step 5 by finding the claimant in that case "failed to establish that he is precluded from all types of work activity."  787 F.2d at 448.  In *Brown*, the ALJ did not show there were other jobs in the regional or national economy that the claimant could perform despite his limitations and vocational profile.  *Id.* at 448-49.

Here, the undersigned finds the ALJ properly applied the Step 5 burden shifting mechanism by obtaining vocational expert testimony regarding the availability of other work in the regional and national economy that Plaintiff can perform despite his limitations (Tr. 23, 244-45).  Although the ALJ may not have worded the Step 5 burden as artfully as Plaintiff would have liked, the undersigned finds no err in the ALJ's statement of the burden of proof at Step 5 of the sequential evaluation process, *supra*.

Plaintiff's second argument that the ALJ erred by failing to adequately prepare the record and Plaintiff's third argument that the ALJ erred by failing to fully and fairly develop the record are essentially coterminous (Doc. #12 at 8-10).  Therefore, the undersigned will address Plaintiff's second and third arguments together.

The gravamen of Plaintiff's second and third argument is that the ALJ failed to adequately and fairly develop the record because, as he maintains, there is lack of evidence concerning his alleged RSD (Doc. #12 at 9).  Plaintiff argues this is especially significant in light of the fact his preferred language is Spanish, and since he was unrepresented at the hearing (Doc. #12 at 9-10).  The undersigned is not persuaded by these arguments.

Plaintiff's aforementioned arguments center around the results of Plaintiff's April 12, 2006 bone scan (Doc. #12 at 9; *see also* Tr. 262-64), and the statement made by his treating physician, Dr. Lipnick, that the non-specific findings of the bone scan results "would not be completely incompatible with RSD" (Tr. 262). Dr. Lipnick went on to point out, however, that some of the non-specific findings may be attributable to altered weight bearing related to Plaintiff's symptomatology (Tr. 262).

Additionally, on the second page of the report at issue, Dr. Lipnick stated his impression was "non-organic pain with disability focus" and that he did not believe Plaintiff has CRPS, type I (Tr. 263). Dr. Lipnick made the following comment: "there is no physical evidence which I can detect to support a diagnosis of CRPS" (Tr. 263). Moreover, Dr. Lipnick reported that

> although he [Plaintiff] continues to tell me during the examination that his foot is purple, cold and swollen. It is as though he and I are looking at different feet. The foot I see appears to be normal and equal to the right foot. [. . .] The patient begs me to write letters supporting disability and I refer him to his attorney.

(Tr. 264).

In reaching the aforementioned conclusions, Dr. Lipnick relied on his physical examinations of Plaintiff, x-rays taken of Plaintiff's foot, MRIs, nerve conduction studies, and EMGs (Tr. 263-67, 271-76). The record reveals that, in Dr. Lipnick's opinion, the objective medical findings from the aforementioned studies do not support that Plaintiff suffers from CRPS, type I, or RSD.

The Regulations specify that it is the plaintiff who bears the burden of providing the medical evidence necessary for the Commissioner to make an informed disability determination. *See* 20 C.F.R. §§ 404.1512(c), 404.1514, 416.912(c), 416.914. The

Regulations state that "[y]ou [the claimant] must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." 20 C.F.R. §§ 404.1512(c), 416.912(c).

Under the circumstances of this case, Plaintiff provided medical records from his treating physician that did not support his contention that he suffers from RSD. The question of whether the ALJ failed to fully develop the record in light of the fact Plaintiff was unrepresented at the hearing turns on whether Plaintiff waived his statutory right to representation and whether the record reveals evidentiary gaps which resulted in unfairness or clear prejudice. *Brown v. Shalala*, 44 F.3d 931, 934-36 (11th Cir. 1995).

As an initial matter, the undersigned notes that only where a claimant's right to representation has not been waived does the Commissioner's duty to fully and fairly develop the record rise to the level of a special duty. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this case, the evidence shows that Plaintiff waived his right to be represented at the hearing.[4] Therefore, the Commissioner's duty to fully and fairly develop the record would not have risen to a special duty, and would have remained a basic obligation to fully and fairly develop the record. Additionally, Plaintiff cites no case law to support his contention that, merely because his preferred language is Spanish, the ALJ was under a greater obligation to develop the record. Here, the ALJ provided an interpreter at

---

[4] Plaintiff was represented by an attorney when he requested a hearing before an ALJ (Tr. 44-45); however, Plaintiff's attorney sent a letter to the ALJ on July 10, 2006, advising that he was no longer representing Plaintiff (Tr. 73). The ALJ subsequently notified Plaintiff, in Spanish, on July 24, 2006 that he still has the right to be represented by an attorney or other person (Tr. 74-83). The ALJ's notice also informed Plaintiff as to the possibility of free counsel (Tr. 74), and included a list of organizations that could help Plaintiff find an attorney or free counsel (Tr. 74, 81-83). At the hearing, the ALJ discussed the notice he sent to Plaintiff regarding his right to be represented at the hearing (Tr. 279). Plaintiff advised the ALJ that he received the notice and that he still wished to proceed without representation (Tr. 280).

the hearing, and the transcript of the hearing indicates Plaintiff understood the questions asked by the ALJ and was able to answer the questions posed by the ALJ (*see* Tr. 277-97). Moreover, Plaintiff has lived in the United States for twenty (20) years and indicated that he can read and understand English (Tr. 115, 272). The aforementioned facts and circumstances do not indicate to the undersigned that any unfairness or clear prejudice arose at the hearing due to the fact Plaintiff's preferred language is Spanish.

Furthermore, the undersigned is not persuaded by Plaintiff's contention that, "because of the lack of evidence with regard to evidence related to RSD," the ALJ should have ordered a consultative examination of Plaintiff (Doc. #12 at 9). This argument is without merit because it is the Plaintiff's burden to provide the necessary evidence for the ALJ to make an informed disability determination. *See* 20 C.F.R. §§ 404.1512(c), 404.1514, 416.912(c), 416.914. Here there are no evidentiary gaps in the record, such as missing medical records, that would require remand. *See Shalala*, 44 F.3d at 935 (finding remand appropriate where the claimant informed the ALJ about the existence of recent medical records, which the ALJ never procured). Accordingly, since there is no indication that medical records are missing from the record, the undersigned does not find remand appropriate under the facts of this case.

### V. Conclusion

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §

405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 30th day of September, 2008.

Copies to all counsel of record
   and *pro se* parties, if any

THOMAS E. MORRIS
United States Magistrate Judge